UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| EASA SHADEH,<br><br>   Plaintiff,<br><br>V.<br><br>GLENN BUICK-GMC TRUCKS, LLC,<br><br>   Defendant. | CIVIL ACTION NO. 5:14-190-KKC<br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on defendant's motion for reconsideration of the Court's December 9, 2014 Opinion and Order and on plaintiff's motion for reconsideration of the Court's December 16, 2014 Order. (DE 27; DE 31). For reasons stated below, the Court will deny both motions.

I.

**A. Factual Background**

Plaintiff Easa Shadeh, who is of Arabic descent, alleges that his employer, Glenn Buick, discriminated and retaliated against him during the course of employment at the car dealership. (DE 1 Compl., at 4–5.) In his complaint, Shadeh describes pervasive discriminatory conduct by a co-worker, Charles Bush, who is black. (*See* DE 1 Compl., at 4– 5; DE 27-2 Pl.'s Dep., at 2–10.) Shadeh also asserts that Mark Franco, his Assistant Manager, participated in some of the alleged instances of discrimination. (*See, e.g.*, DE 27-2 Pl.'s Dep., at 7 (stating that Bush and Franco told Shadeh that his family recruits their children to become suicide bombers); DE 27-2 Pl.'s Dep., at 8 (alleging that Bush and Franco asked Shadeh how many of his family members were 9/11 terrorists); DE 27-2 Pl.'s

Dep., at 8 (asserting that Bush and Franco told Shadeh and his family to go "back to where [they] belong"); DE 27-2 Pl.'s Dep., at 8 (claiming that Franco blamed Shadeh for being the reason that "Americans couldn't find jobs").)

Additionally, Shadeh contends that Tim Burton, Glenn Buick's General Manager, and Steve Goldsberry, an Office Manager, knew of and assented to Bush's conduct. (*See, e.g.*, DE 27-2 Pl.'s Dep., at 4–5 (stating that after Burton witnessed—or Shadeh reported—Bush's behavior, Burton "said he didn't mind Charles Bush harassing [Shadeh] because [Shadeh and Bush] were both minorities"); DE 27-2 Pl.'s Dep., at 6 (asserting that Goldsberry said nothing after witnessing Bush ask Shadeh if his family members celebrated the anniversary of 9/11 and after witnessing Bush declare that Shadeh's Bible was "just for show . . . [because h]e's one of those goddamn Muslims"); DE 27-2 Pl.'s Dep., at 7 (claiming that Burton chuckled in response to witnessing Bush's pronouncement that Shadeh recruits his children to be suicide bombers).)

After allowing the harassment to continue, Shadeh claims that Burton contrived a reason to terminate his employment at Glenn Buick. (DE 31-1 EEOC Form, at 1.)

**B. Procedural History**

On August 12, 2013, Shadeh filed a charge of discrimination with the Lexington-Fayette Urban County Human Rights Commission ("HRC") and the Equal Employment Opportunity Commission ("EEOC") against his former employer, Glenn Buick. (DE 31-1 EEOC Form, at 1.) Shadeh was not represented by counsel during the proceedings before the EEOC. (DE 31 Pl.'s Mot., at 3.) On February 19, 2014, the EEOC issued a Dismissal and Notice of Shadeh's Suit Rights. (DE 1-1 EEOC Dismissal, at 2–3.) Shadeh then filed a complaint in this Court alleging discrimination and retaliation in violation of Title VII of

2

the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. (DE 1). On June 4, 2014, Glenn Buick answered the complaint. (DE 4).

Shadeh moved to strike twelve of Glenn Buick's affirmative defenses. (DE 12). The Court granted the motion in part and denied the motion in part. (*See* DE 23, at 8.) One of the stricken defenses asserted that Shadeh "failed to report and/or utilize the Defendant's Equal Employment Opportunity processes and procedures . . . pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)." (DE 4 Answer, at 3.) The Court determined that the defense should be stricken because both Supreme Court cases held that the affirmative defense is unavailable if the employer takes a "tangible employment action," and, here, Glenn Buick terminated Shadeh. (DE 23, at 4; *see also Faragher*, 524 U.S. at 807–08; *Ellerth*, 524 U.S. at 765.)

After the Court granted Shadeh's motion to strike in part and denied the motion in part, Glenn Buick moved to file an amended answer. (DE 24). The Court granted Glenn Buick's motion. (DE 29). In the amended answer, Glenn Buick removed the stricken defenses, kept the defenses that were not stricken, and added a defense stating that "Plaintiff's Complaint is barred due to his failure to exhaust his administrative remedies before the EEOC." (DE 30 Am. Answer, at 3.)

## II.

A court may grant a motion for reconsideration of a pretrial order for any of the following reasons: (1) mistake; (2) newly discovered evidence; (3) party misconduct; or (4) any other reason that justifies relief. Fed. R. Civ. P. 60(b). A motion for reconsideration is not, however, a second bite at the apple. *See Kmart Corp. v. 21st Century Pets, Inc.*, 54 F. App'x 220, 221 (6th Cir. 2003); *Collins v. Nat'l Gen. Ins. Co.*, 834 F. Supp. 2d 632, 641 (E.D. Mich. 2011).

**A. Reconsideration of the Court's December 9, 2014 Opinion and Order**

Glenn Buick asserts that the Court should reconsider the Opinion and Order striking Glenn Buick's *Faragher*/*Ellerth* affirmative defense. (DE 27). Glenn Buick asserts that *Faragher*/*Ellerth* "address tangible, adverse employment actions taken by a *supervisor*, NOT a *co-worker*." (DE 27 Def.'s Mot., at 2 (emphasis in original).) But Glenn Buick does not address the exception to the *Faragher*/*Ellerth* defense.

*Faragher* and *Ellerth* held that an employer is vicariously liable if a supervisor engaged in hostile work environment harassment. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. Both *Faragher* and *Ellerth* involved harassing behavior by supervisors, but *Faragher* also reviewed the landscape of employer liability in other situations. 524 U.S. at 788–92. For example, *Faragher* explicitly approved numerous lower court opinions that "held employers liable on account of <u>actual knowledge by the employer</u>, or high-echelon officials of an employer organization, of sufficiently harassing action by subordinates, which the employer or its informed officers <u>have done nothing to stop</u>." 524 U.S. at 789 (emphasis added). *Faragher* also quoted Justice Marshall's concurring opinion in *Meritor*. 524 U.S. at 790. Justice Marshall stated that an employer would be liable for the act of termination itself "when a supervisor discriminatorily [terminates] a black employee." *Meritor*, 477 U.S. at 75 (Marshall, J., concurring in judgment).

*Faragher* and *Ellerth* also established an affirmative defense for an employer that may be subject to vicarious liability[1] for hostile work environment harassment. *Faragher*,

---

[1] The Court notes that the standard for supervisor and co-worker liability is not the same; however, for Glenn Buick's benefit, the Court assumes that the theory of vicarious liability applies because the *Faragher*/*Ellerth* defense is only available as a defense against vicarious liability. *See, e.g.*, *Faragher*, 524 U.S. at 807 (noting that

524 U.S. at 807; *Ellerth*, 524 U.S. at 765. The affirmative defense has two elements: (1) the employer exercised reasonable care to correct or prevent the harassment; and (2) the plaintiff employee unreasonably failed to utilize curative opportunities provided by the employer. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

But the affirmative defense is available only if "no tangible employment action is taken." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. Tangible employment actions include termination. *Faragher*, 524 U.S. at 808; *Ellerth*, 524 U.S. at 761; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 70–71 (1986). Termination extinguishes the affirmative defense because a plaintiff employee's failure to utilize curative opportunities following termination would not be unreasonable because such opportunities are—logically—no longer curative. *See Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

Here, Glenn Buick asserts that the *Faragher/Ellerth* affirmative defense should still be available because Charles Bush, a co-worker, committed the alleged harassment. (DE 27 Def.'s Mot., at 3–4.) Assuming *arguendo* that Mark Franco does not qualify as a supervisor, Tim Burton's statement that "he didn't mind Charles Bush harassing [Shadeh] because [Shadeh and Bush] were both minorities" does not constitute supervisor harassment, and Steve Goldberry's failure to act upon his actual knowledge of Bush's harassment does not create employer liability, Glenn Buick's argument does not address the elements or exception to the affirmative defense. The exception clearly states that the affirmative defense is not available if a supervisor takes a tangible employment action. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. It is uncontested that Burton is a supervisor and that

---

the defense applies to employers that are "subject to vicarious liability to a victimized employee"); *Ellerth*, 524 U.S. at 765 (same); *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001) ("The Supreme Court made clear that the affirmative defense outlined in *Ellerth* and *Faragher* applies only in the cases of vicarious liability.").

5

Burton terminated Shadeh. (*Compare* DE 27 Def.'s Mot., at 1–4, *with* DE 31-1 EEOC Form, at 1; *see also Meritor*, 477 U.S. at 75 (Marshall, J., concurring in judgment).)

Glenn Buick has not demonstrated through mistake, newly discovered evidence, party misconduct, or any other justifiable reason that the exception to the *Faragher/Ellerth* affirmative defense does not apply. Therefore, Glenn Buick has not met its burden for the Court to reconsider its prior Opinion and Order. Fed. R. Civ. P. 60(b).

**B. Reconsideration of the Court's December 16, 2014 Order**

Shadeh claims that the Court should reconsider the Order granting Glenn Buick's motion to file an amended answer. (DE 31). Shadeh alleges that Glenn Buick's motion was untimely and that the additional affirmative defense asserted in the amended answer is insufficient as a matter of law. (DE 31 Pl.'s Mot., at 5–8.)

*1. Although Glenn Buick's motion fell outside the time contemplated in the scheduling order, Shadeh is not significantly prejudiced.*

"The court should freely give leave" to a party to amends its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Yet a court may deny leave on the basis of delay, bad faith, dilatory motive or futility." *Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 444 (6th Cir. 2014). Undue delay may exist if a party moves to amend its pleading after the close of discovery, *see id.* at 445, but not if the opposing party has notice of the additional claim and has an opportunity to respond. *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770–71 (6th Cir. 2008).

Here, Glenn Buick's motion to amend its answer is untimely; however, the deadline for completing fact discovery is April 30, 2015 and the deadline for dispositive motions is July 21, 2015. (DE 16 Scheduling Order, at 2.) Discovery has not closed and Shadeh has an opportunity to file dispositive motions related to the additional affirmative defense.

Further, Glenn Buick filed its motion two days after the Court granted, in part, Shadeh's motion to strike some of the affirmative defenses that Glenn Buick raised in its initial answer. (*Compare* DE 23 Op. and Order, *with* DE 24 Def.'s Mot.).

Shadeh is not significantly prejudiced because he has notice and an opportunity to respond. *Seals*, 546 F.3d at 770–71. Therefore, Glenn Buick's untimeliness is not a sufficient reason for the Court to reconsider its prior order. *See* Fed. R. Civ. P. 15(a)(2).

*2. Glenn Buick's additional affirmative defense is not insufficient as a matter of law.*

The court may strike any defense that is insufficient as a matter of law. Fed. R. Civ. P. 12(f); *see also Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). But "the action of striking a pleading should be sparingly used by the courts [because i]t is a drastic remedy to be resorted to only when required for the purposes of justice [and] granted only when the pleading to be striken (*sic*) has no possible relation to the controversy." *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822 (internal citations omitted).

Here, Glenn Buick's additional affirmative defense states that "Plaintiff's Complaint is barred due to his failure to exhaust his administrative remedies before the EEOC." (DE 30 Am. Answer, at 3.) Shadeh interprets this defense to bar his retaliation claim because he "did not check off the 'retaliation' box" in his EEOC charge of discrimination. (DE 31 Pl.'s Mot., at 2.) Shadeh contests that such a defense is barred by the Sixth Circuit "scope of investigation" test. (DE 31 Pl.'s Mot., at 5 (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)).)

Glenn Buick's Response asserts, however, that the additional affirmative defense does not challenge Shadeh's EEOC charge of discrimination. (*See* DE 34 Def.'s Resp., at 2–3.) Rather, Glenn Buick claims that Shadeh has refused to produce all of the documents in

Shadeh's possession that are relevant to the EEOC's investigation. (DE 34 Def.'s Resp., at 2–3.) Glenn Buick contends that the affirmative defense addresses "Plaintiff['s] intentional[] thwart[ing of the] Defendant's effort to discover what was within the scope of inquiry conducted by the EEOC." (DE 34 Def.'s Resp., at 3.)

Shadeh did not reply to Glenn Buick's Response clarifying the intended bounds of Glenn Buick's additional affirmative defense. Shadeh has not proven that the defense "has no possible relation to the controversy." *See Brown & Williamson Tobacco Corp.*, 201 F.2d at 822. Therefore, Shadeh has not met his burden in proving that the defense is insufficient as a matter of law and that the Court should reconsider its prior Order. *See id.*, *see also* Fed. R. Civ. P. 60(b).

### III.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The defendant's motion for reconsideration (DE 27) is **DENIED**; and

2. The plaintiff's motion for reconsideration (DE 31) is **DENIED**.

Dated March 24, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY